### EX PARTE GREGORIO RODRIGUEZ.

No. 2494. Decided April 22, 1903.

**County Convict—Right to Discharge on Account of Imprisonment—Affidavit in Forma Pauperis.**

A party convicted and imprisoned for nonpayment of a fine and costs adjudged in a misdemeanor is not entitled to discharge from imprisonment because he has been in jail more than ten days and a sufficient length of time to satisfy the judgment, at the rate of $3 per day, where he has failed to make the required affidavit, in forma pauperis, as provided by article 856, Code of Criminal Procedure. Articles 856 and 980, Code of Criminal Procedure, must be considered in pari materia; the former article must be complied with before the latter becomes available.

Appeal from the County Court of Sutton. Tried below before Hon. R. C. Dawson, County Judge.

Appeal from a judgment on habeas corpus, remanding relator to custody for failing to satisfy a judgment rendered against him in a misdemeanor.

*Taylor & Cornell,* for relator.—Article 980, Code of Criminal Procedure, is as follows: "If a defendant be placed in jail, on account of failure to pay fine and cost, he can be discharged on habeas corpus by showing: 1. That he is too poor to pay the fine and costs. 2. That he has not been afforded an opportunity by the commissioners court of the county of discharging the fine and costs adjudged against him, as provided in the law relating to county convicts; and further, 3. That he has remained in jail a sufficient length of time to satisfy the fine and costs at the rate of three dollars for each day. But the defendant shall in no case, under this article, be discharged until he has been imprisoned at least ten days; and a justice of the peace may discharge the defendant upon his showing the same cause, by written application, presented to such justice, and upon such application being granted, the justice shall note the same on his docket."

Article 856, Code of Criminal Procedure, is as follows: "When a defendant is convicted of a misdemeanor, and his punishment is assessed at a pecuniary fine, if he make oath in writing that he is unable to pay the fine and costs adjudged against him, he may be hired out to manual labor, or be put to work in the manual labor workhouse, or on the manual labor farm, or public improvements of the county; or, in case there be no such workhouse, farm or improvements, and in case the county authorities fail to hire out such convict in accordance with the law regulating county convicts, he shall be imprisoned in the county jail for a sufficient length of time to discharge the full amount of the fine and costs adjudged against him, rating such punishment at three dollars for each day thereof."

Strange as it may seem, article 980 has never been construed nor even referred to, in its present form, in any of the decisions of this State, so far as we have been able to ascertain after thorough search. However, the decisions of our courts under article 856, as found in section 1219, White's Code of Criminal Procedure, are numerous. We shall consider them briefly, and endeavor to show that none of them bring into question the validity of or involve a construction of article 980; that none of them go to the extent of holding that article 980 should be considered in connection with article 856, or that article 856 should control article 980 in so far as it requires the making of an affidavit; and that none of them justified the court below in refusing to discharge appellant.

After reviewing all the authorities, they say: We feel safe in asserting that in no case ever decided in this State has an applicant been denied a discharge when he has shown the facts required by article 980, Code of Criminal Procedure, to be shown.

We have reviewed the above decisions because we believe that if appellant is denied his discharge, it will be upon the theory that article 856 does control article 980, in so far as it requires an affidavit of inability; and because we have the statement of the lower court that he denied appellant his discharge upon this theory.

Article 856 appears under title 9, Code of Criminal Procedure, entitled, "Of the Proceedings after Verdict," under chapter 3, "Judgment and Sentence." Article 980 appears in title 11, Code of Criminal Procedure, entitled, "Of the Proceedings in Criminal Actions before Justices of the Peace, Mayors and Recorders," under chapter 3, entitled, "Of the Trial and its Incidents."

From the manner of their arrangement, and the fact that article 980 places it within the power of a justice of the peace, upon a written application showing the facts recited in article 980, to discharge an applicant, a power which a justice certainly would not have under article 856, and from the fact that a party who had complied with the provisions of article 856 would be entitled to his discharge under a writ of habeas corpus even were it not for article 980, we think the court would be justified in holding that article 980 was intended to apply in cases where parties had been convicted before a justice, and that article 856 was intended to apply where the conviction was had elsewhere; that is, that article 980 is a special statute relating to convictions had before a justice, and should therefore control article 856, a general statute, when a party convicted before a justice is seeking relief.

Now, we are led to inquire, why should article 856 be held to control article 980? It is not and can not be doubted that a party who has complied with article 856 would be entitled to his discharge by habeas corpus, even though article 980 had never been passed, because if a party has complied with article 856, and would then apply for his discharge, and such discharge refused, there would be no doubt that he would be illegally restrained of his liberty, and the writ of habeas corpus is made the remedy to be availed of by all persons who are illegally restrained of their liberty. We believe, however, that article 980 was passed for the purpose of providing a remedy for parties who had been committed to jail, and who had failed, through ignorance of their rights or for other reasons, to make the affidavit. We believe that article 980 is as plain and intelligible as any article in the code, and that it should be construed to be complete within itself, and to entitle a defendant to a discharge when he has brought himself within the folds of its provisions. The court will note that article 980 places it within the power of a justice to discharge a defendant. Now, it is hard to believe that the Legislature intended that a justice should be compelled to settle difficult rules of construction; it is more reasonable to presume that a Legislature intended that a justice should look to article 980 alone, when an application for discharge is made to him, and the fact that such power is placed in the hands of a justice accounts for the Legislature having been so plain and specific in the language used

in article 980. Certainly if it were not for article 980 the justice would not have the power to discharge, and we believe this shows all the more clearly that article 980 was intended to give the defendant the right of discharge when the affidavit had not been made. An inquiry into the reason of the law will no doubt confirm this position. It seems strange, at first view, that the Legislature should allow county convicts only 50 cents per day when they labor, and allow them $3 per day when they do not labor. Now, why this distinction? It seems that when a party is convicted of a misdemeanor and his punishment is assessed at a pecuniary fine, the law intends that he shall pay this fine, if able, and the law authorizes the issuance of an execution to enforce the collection of same, and neither article 856 nor article 980 afford any relief whatever unless the party proves in some manner that he is unable to pay the fine and costs adjudged against him. If a party is committed to jail in default of the payment of fine and costs, it is the intention that the county authorities should compel him to work out said fine and costs on the public improvements of the county, and the law feels that the county is amply reimbursed for the expense thus put to, by the improvement of the public roads, etc. However, when the county authorities fail to comply with the plain mandates of the law, and permit a party committed to jail to lie there idle at the expense of the county, if the party is actually unable to pay the fine and costs, it is the intention of the law that he should lie there idle, at the county's expense, as short a time as possible. For this reason the law allows credits of $3 per day for such time. This we believe to be a wise provision. The two articles in question simply provide a different method of proof; the first by affidavit; the second by sworn proof. Since it is the funds of the county that the law seeks to protect, what difference could it possibly make if the facts actually existed, whether they be established by affidavit or by sworn testimony? If there is any difference, it is in favor of the sworn testimony. Because the State would then have an opportunity to cross-examine the defendant and the witnesses produced by him in support of his application, and to disprove those facts by witnesses, if this were possible.

If it be held that both articles apply to convictions for misdemeanors, in whatever court the conviction is had, we believe the court should hold that article 980 is a separate and independent article of the Code of Criminal Procedure, complete within itself, and intended to afford relief when the facts therein indicated are established; that since neither of these articles negative the other, they should be so construed as to stand together, and have concurrent efficacy.

*Howard Mortin,* Assistant Attorney-General, for respondent.

BROOKS, JUDGE.—Relator applied for the writ of habeas corpus to Hon. R. C. Dawson, county judge of Sutton County, in vacation, to be released from a fine imposed in the justice court. He states in his

application: "I do further swear that I was committed to jail by virtue of the process annexed hereto on the date therein named, to wit, on January 31, 1903; that I am, and have been ever since the same was imposed on me, too poor to pay said fine and costs; that I have not been afforded an opportunity by the commissioners court of the county of discharging the fine and costs adjudged against me, as provided in the law relating to county convicts; that I have remained in jail a sufficient length of time to satisfy said fine and costs at the rate of three dollars for each day; that I have been confined for more than ten days." The evidence adduced on the hearing is substantially as follows: Appellant had been in jail fourteen days; that he had not been put to work at the county workhouse, upon the county convict farm, nor upon the public roads, bridges or other improvements of the county, but that he had on three different occasions since his imprisonment swept out the county courthouse; that he had not been hired out under the law relating to county convicts. It was shown by the testimony of Albert Owens that he was constable of precinct No. 1, Sutton County; that he arrested appellant; that when he put appellant in jail, and told him he could give a convict bond, or could make an affidavit showing his inability to pay the fine and costs adjudged against him, in which case he would be entitled to a credit of $3 for each day he remained in jail, he was not certain appellant understood him although he had a Mexican interpreter. It was agreed in open court by counsel for State and defendant that appellant was then, and ever since his imprisonment had been, too poor to pay the fine and costs adjudged against him, and that appellant had not, as suggested in article 856, Code of Criminal Procedure, made an affidavit showing his inability to pay the fine and costs adjudged against him.

Appellant insists that he was entitled to his discharge because the evidence shows that he had been placed in jail on account of the failure to pay the fine and costs against him in the justice court; and having shown further, first, that he was too poor to pay said fine and costs; second, that he had not been afforded an opportunity by the commissioners court of the county of discharging the fine and costs adjudged against him, as provided in the law relating to county convicts; and third, that he had remained in jail a sufficient length of time to satisfy said fine and costs at the rate of $3 for each day, and that he had remained in jail at least ten days—this contention involves a construction of articles 856 and 980, Code of Criminal Procedure. The latter article was passed in 1858 and the former some time after that. If there is an apparent conflict, said statutes must be reconciled, if a proper judicial construction of the same will enable us to do so. We hold article 980, Code of Criminal Procedure, in any event, does not authorize the release of relator unless he has been imprisoned for ten days; and he must also have complied with the provisions of article 856, in relation to filing his affidavit authorizing a credit upon his fine of $3 per day. The mere fact that relator had been confined over ten days, in the absence of such affidavit,

would not per se authorize his release. Clearly, article 980 contemplates that the same must be considered in pari materia with article 856, and, when so done, the conclusion here stated is irresistible; that is, that relator, if convicted in the justice court, and immediately makes an affidavit of his inability to pay the fine and costs; as required by article 856, and is not afforded an opportunity by the commissioners court of the county to discharge said fine and costs, as provided by law relating to county convicts, then he is entitled to be discharged, either on habeas corpus or by proper showing before justice of the peace, unless it is further made to appear that he has not been in jail ten days. In other words, when one is convicted in the justice court, he can not, in any event, be discharged until he has remained ten days in jail, and not then unless he has filed the proper affidavit as required by article 856. It follows, therefore, that the judgment of the lower court remanding relator to the custody of the officer must be affirmed, and it is so ordered.

*Affirmed.*